GATEPLEX MOLDED PRODUCTS, INC v COLLINS & AIKMAN
PLASTICS, INC

Docket No. 239459. Submitted January 7, 2004, at Detroit. Decided February 26, 2004, at 9:05 A.M.

Gateplex Molded Products, Inc., brought an action in the Macomb Circuit Court against Collins & Aikman Plastics, Inc., seeking a declaration of rights in certain molds in the plaintiff's possession and a preliminary injunction preventing the defendant from recovering the molds. The defendant counterclaimed for conversion. The molds were owned by General Motors Corporation, which had allowed the defendant to possess the molds pursuant to a contract for the production of plastic parts. The defendant had subcontracted with Mexican Industries for the parts production, and Mexican, in turn, had subcontracted with the plaintiff, which had performed the actual production. The plaintiff had asserted a molder's lien against Mexican after it was not paid in full by Mexican. The court, James M. Biernat, Sr., J., denied the request for a preliminary injunction and issued a judgment in favor of the defendant, ruling that the plaintiff's molder's lien against Mexican was invalid because the molds did not belong to Mexican for the purposes of the molder's lien act, MCL 445.611 et seq. The plaintiff appealed.

The Court of Appeals held:

MCL 445.618 provides that a molder has a lien on any mold in the molder's possession belonging to a customer for the amount due the molder from the customer for plastic fabrication work performed with the mold. "Belonging to" as used in the statute means ownership. The construe "belonging to" to mean anything less than ownership would undermine the provisions of the molder's lien act relating to notification, sale, and distribution of proceeds from the sale of molds by those holding a molder's lien.

Affirmed.

LIENS — MOLDER'S LIEN — MOLD OWNERS.

A molder has a statutory lien on any mold in the molder's possession belonging to a customer for the amount due the molder from the customer for plastic fabrication work performed with the mold; a molder's lien can only be asserted against the owner of the mold (MCL 445.618).

*Wulfmeier & Ottenwess, PLC* (by *George M. Malis* and *Valerie Henning Mock*), for the plaintiff.

*Honigman Miller Schwartz and Cohn LLP* (by *Norman C. Ankers*) for the defendant.

Before: OWENS, P.J., and SCHUETTE and BORRELLO, JJ.

SCHUETTE, J. In this molder's lien case, plaintiff Gateplex Molded Products, Inc., appeals as of right a declaratory judgment in favor of defendant Collins & Aikman Plastics, Inc. We affirm.

## I. FACTS

General Motors Corporation (GM) contracted with defendant to produce certain plastic parts for its automobiles. GM owned the molds and allowed defendant to possess them, use them, or assign them for possession and use by third persons to produce the plastic parts. Defendant assigned the molds to Mexican Industries (Mexican) to do the production. Mexican then assigned them to plaintiff to do the production. Defendant is a "Tier I" subcontractor—subcontracting directly from GM. Plaintiff is a "Tier III" subcontractor—two steps further removed. Plaintiff produced the parts, but before plaintiff was paid in full by Mexican, Mexican filed for bankruptcy. Before filing for bankruptcy, Mexican was paid in full by defendant for the plastic parts produced by plaintiff. Plaintiff filed a molder's lien against Mexican and refused to return the molds when asked to do so by defendant.

Plaintiff then filed this action requesting a declaration of rights in the molds. In its complaint, plaintiff alleged that Mexican issued a purchase order to plain-

tiff for the production of plastic parts. Plaintiff also alleged that Mexican furnished or caused plaintiff to use certain tooling dies, molds, and other equipment in the process of producing plastic parts. Plaintiff further alleged that the parts produced by plaintiff were sent to Mexican, then to defendant, and finally were placed in GM automobiles. Plaintiff next alleged that Mexican included language in the purchase order indicating the molds belonged to Mexican:

> [The molds] shall not be used by Seller [Plaintiff] for any purpose other than the performance of this order, shall be deemed to be personalty, shall be conspicuously marked "Property of Mexican Industries in Michigan, Inc," by Seller [Plaintiff], shall not be commingled with the property of Seller [Plaintiff] or with that of any third person and shall not be moved from Seller's [Plaintiff's] premises without Buyer's [Mexican's] prior written approval.

Plaintiff then alleged that on April 19, 2001, it filed a notice of molder's lien against Mexican for the amount owed for plastic part production. Plaintiff additionally alleged upon information and belief that Mexican filed chapter 11, later converted to chapter 7, bankruptcy.

Plaintiff also sought a preliminary injunction to stop defendant from recovering the molds. Plaintiff relied on the reasons set forth in the complaint as the grounds for the court to grant the preliminary injunction.

The trial court denied plaintiff's motion for a preliminary injunction because: (1) it found that money damages would be sufficient to settle the matter if plaintiff won; (2) there was not a substantial probability that plaintiff would win; and (3) there would be a substantial injury to defendant if it had to

wait for the molds because it would not be able to make the parts necessary for the automobiles, which would shut down production on a number of cars.

Defendant answered plaintiff's complaint with affirmative defenses, including that plaintiff failed to state a claim on which relief could be granted and that defendant did not proximately cause any of plaintiff's damages. Defendant also filed a counter-claim for conversion, demanding return of the molds immediately.

The trial court decided the case for defendant. The court determined that plaintiff did not state a valid cause of action because it did not have a valid lien on the molds. The court concluded that the molds did not "belong to" Mexican under MCL 445.618, but belonged to GM, which both parties acknowledged in the stipulated facts was the owner of the molds. Therefore, the court ordered the immediate return of the molds by plaintiff to defendant.

## II. STANDARD OF REVIEW

Questions of statutory interpretation are questions of law, which are reviewed de novo. *In re MCI Telecom*, 460 Mich 396, 413; 596 NW2d 164 (1999).

## III. ANALYSIS

Plaintiff argues that the trial court erred in its interpretation of the words "belonging to" in MCL 445.618. We disagree.

On appeal the parties agree that the "central issue to this appeal is the trial court's interpretation of MCL 445.618, particularly the words 'belonging to.'" The trial court determined "belonging to" meant owner-

ship and this court reviews the trial court's statutory interpretation de novo. *In re MCI Telecom, supra* at 413. In determining the meaning of a statute the following rule applies:

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [*Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997) (citations omitted).]

### A. STATUTORY LANGUAGE

An overview of the statutory language and scheme of the molder's lien portion of the statute leads us to believe that the Legislature intended a molder's lien to apply only against the absolute owner and titleholder to the mold.[1] The relevant statutory scheme is divided into three parts. Part one, MCL 445.611, defines terms including what constitutes a "customer." Part two, MCL 445.612-445.617, is not related to the molder's lien but discusses a time limit after which a customer loses its rights in the mold through

---

[1] Effective March 1, 2002, 2002 PA 17 modified the moldbuilder's lien act. The act amended MCL 445.611 and 445.618a, and added MCL 445.619, 445.620, 445.620a, 445.620b, and 445.620c. The trial court in this case issued its final order on January 14, 2002, before the changes to this act went into effect. Therefore, this opinion will reference the language of the act before its March 1, 2002, modifications. We note that the changes to this act would not have altered the outcome of this case.

inaction, MCL 445.611-445.617. Part three concerns the molder's lien, MCL 445.618 to 445.618d.

MCL 445.618, which defines the necessary elements for a molder's lien, requires that a mold "belong to" the "customer" for the lien to be valid. MCL 445.618a-445.618d discuss the notice and sale mechanics and requirements for a molder's lien.

In sum, under the statute:

• MCL 445.618 establishes a right to the lien (1) when the molder possesses the mold, (2) the mold "belongs to" the customer, and (3) for an amount owed the molder by the customer for work done with the mold. It allows the molder to keep the mold as security for payment.

• MCL 445.618a requires the molder to send the customer the amount due notice before enforcing the lien.

• MCL 445.618b allows the molder to sell the mold at public auction if the mold is still in the molder's possession, and ninety days have passed since the molder has given the customer notice.

• MCL 445.618c requires the molder to give notice to the customer and any person whose security interest is perfected by filing sixty days' notice before the mold is sold. It also allows for the customer to dispute the molder's attempt to sell the mold because the parts produced by the molder failed to meet the quality or quantity ordered. If the molder receives notice of such a dispute, it cannot sell the mold until the dispute is resolved.

• MCL 445.618d discusses the distribution of the sale proceeds upon the sale of the mold, including giving the excess of the proceeds to the customer.

MCL 445.611 sets forth the definition of a "customer" as

> a person who causes a molder to fabricate, cast, or otherwise make a die, mold, or form for use in the manufacture, assembly, or fabrication of a plastic product, or a person who causes a molder to use a die, mold, or form to manufacture, assemble, or fabricate a plastic product.

We believe that defining "belonging to" as anything less than "owner" undermines the usefulness of the notification and excess proceeds provisions, MCL 445.618a, 445.618c, 445.618d. It makes no sense to require *notification* of the customer, but fail to require notification of the owner, MCL 445.618a, 445.618c. Further, it makes no sense to give the customer the *excess of the proceeds* from the sale to a customer who has no ownership interest in the mold, MCL 445.618d. The owner is the party entitled to notification and any excess proceeds from the sale of the molds.

However, under plaintiff's definition of "belonging to" the owner gets neither notice nor the excess proceeds. Mexican, who has a mere possessory interest in the molds would have to be notified of the lien and sale, as well as receive any excess proceeds of a sale of the molds. GM, the owner of the molds, would not have to be notified, nor would it receive any of the excess proceeds from a sale. We find this argument contrary to common sense. Courts should not abandon common sense when construing a statute. *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003).

Moreover, MCL 445.618c requires the molder to provide notice to any other person who may have a

*security interest* in the mold before selling the mold. Thus, if plaintiff's definition is to be accepted, the molder is required to notify the *customer* and lienholder, but not the owner. Again, it is contrary to common sense to require notification to interested parties and leave out the most interested party—the owner.

However, if "belonging to" is understood to mean ownership, then all interested parties are notified. This makes much more sense. *Proudfoot, supra,* at 708. The language in MCL 445.618a-445.618d evidences that MCL 445.618 of the statute was intended to apply only to customers who are titleholders.

### B. DICTIONARY DEFINITIONS

We believe that the definition of the words "belonging to" can be derived from its usage in the statute itself as shown above. Nonetheless, the statute does not specifically define "belonging to" and if the legislative intent cannot be determined from the statute itself, a court may consult dictionary definitions. *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001).

The trial court did cite dictionary definitions and concluded that the connotation of the word "belong" was ownership. Both parties also cite dictionary definitions that show various meanings of the words "belonging to." In sum, the dictionary definitions provided by the parties show that the usual meaning of "belonging to" relates to ownership, but that a meaning implying less than complete ownership also applies on occasion.

For example, plaintiff cites Black's Law Dictionary, (4th ed), which defines "belong" as follows:

To appertain to; to be the property of. Property "belonging" to a person has two general meanings: (1) ownership; . . . and (2) less than ownership, *i.e.*, less than an unqualified and absolute title, such as the absolute right of the user.

If something less than absolute title is considered for the definition of "belong," Mexican's rights in the mold were too limited for even this to apply. As defendant points out in its brief, Mexican's rights in the molds were possessory for the purpose of accomplishing a particular job and were revocable without notice or delay. This does not constitute the "absolute user" rights noted in the second definition of "belong" above.

The trial court did not err in finding that "belonging to" in MCL 445.618 means ownership. Though not specifically defining "belonging to," the language in the statute itself, and especially the application of the notice and excess proceeds provisions, evidence that a customer need be an owner before the statute applies.

The ordinary usage of the words "belonging to" connotes ownership. Finally, the potential negative effects of allowing a meaning that would permit the molds in question to "belong to" Mexican under the statute could substantially affect production and would give subcontractors a disproportionate amount of power in any payment dispute. Thus, the trial court did not err in finding for defendant here.

The trial court did not err in its determination that the words "belonging to" in MCL 445.618 refer to ownership and not something less than ownership.

Affirmed.