# STATE OF MICHIGAN

# COURT OF APPEALS

SEJASMI INDUSTRIES, INC.,

        Plaintiff/Counter-Defendant-
        Appellee,

v

A+ MOLD, INC., d/b/a TAKUMI
MANUFACTURING COMPANY,

        Defendant/Cross-Defendant,

and

QUALITY CAVITY, INC.,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff/Third-Party Plaintiff-
        Appellant,

and

NKL MANUFACTURING, INC.,

        Third-Party Defendant.

UNPUBLISHED
April 5, 2016

No. 328292
Macomb Circuit Court
LC No. 2014-004273-CB

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant, Quality Cavity, Inc. (hereinafter "Quality"), appeals as on leave granted the July 1, 2015 opinion and order by the trial court, on reconsideration, finding Quality's liens on certain molds were extinguished and dismissing Quality's motion for possession. We affirm in part, but remand for further fact finding.

In broad terms, this matter concerns the interpretation and application of the molder's lien act, MCL 445.611 *et seq.*, pertaining to "ownership rights in dies, molds, and forms for use in the fabrication of plastic parts under certain conditions," along with the establishment of liens on "certain dies, molds, and forms." 2002 PA 17. Specifically, this appeal involves liens asserted by Quality for molds or tools made and sold to defendant, Takumi Manufacturing Company ("Takumi"), which were being used and in the possession of plaintiff, Sejasmi Industries, Inc.

-1-

("Sejasmi"). Thus, in accordance with the definitions provided in MCL 445.611, the relationships and status of the parties were as follows:

1. Takumi was a "customer" having "cause[d] a moldbuilder to fabricate, cast or otherwise make a die, mold, or form for use in the manufacture, assembly, or fabrication of plastic parts, or a person who causes a molder to use a die, mold, or form to manufacture assemble, or fabricate a plastic product." [MCL 445.611(a).]

2. Quality is a "moldbuilder" because it "fabricates, casts, or otherwise makes, repairs, or modifies a die, mold, or form for use in the manufacture, assembly, or fabrication of plastic parts." [MCL 445.611(b).]

3. Sejasmi is a "molder" because it "uses a die, mold, or form to manufacture, assemble, or fabricate plastic parts." [MCL 455.611(c).]

Quality contends the trial court erred in determining that its liens for the various molds now being used and in the possession of Sejasmi were extinguished and in denying its request for possession of the molds. Specifically, Quality contests the factual findings of the trial court in determining that Sejasmi served the requisite verified statement on Takumi and the propriety of finding that all five molds at issue were encompassed by the lien release. Quality also takes issue with the trial court's application and reading of MCL 445.619(5)(b), asserting that the statutory provision must include a requirement of payment to the moldbuilder to both effectuate the statute's purpose and in order to obtain a logical rather than absurd result.

Issues of statutory interpretation comprise issues of law, which are subject to de novo review. *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 78; 869 NW2d 213 (2015); *New Properties, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 138; 762 NW2d 178 (2009). A circuit court's findings of fact are reviewed for clear error. *CG Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 337; 804 NW2d 781 (2011). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Massey v Mandell*, 462 Mich 375, 379; 614 NW2d 70 (2000). This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Woods v SLB Property Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

The statutory provision relevant to this appeal is MCL 445.619, which states:

(1) A moldbuilder shall permanently record on every die, mold, or form that the moldbuilder fabricates, repairs, or modifies the moldbuilder's name, street address, city, and state.

(2) A moldbuilder shall file a financing statement in accordance with the requirements of section 9502 of the uniform commercial code, 1962 PA 174, MCL 440.9502.

(3) A moldbuilder has a lien on any die, mold, or form identified pursuant to subsection (1). The amount of the lien is the amount that a customer or molder owes the moldbuilder for the fabrication, repair, or modification of the die, mold, or form. The information that the moldbuilder is required to record on the die,

-2-

mold, or form under subsection (1) and the financing statement required under subsection (2) shall constitute actual and constructive notice of the moldbuilder's lien on the die, mold, or form.

(4) The moldbuilder's lien attaches when actual or constructive notice is received. The moldbuilder retains the lien that attaches under this section even if the moldbuilder is not in physical possession of the die, mold, or form for which the lien is claimed.

(5) The lien remains valid until the first of the following events takes place:

(a) The moldbuilder is paid the amount owed by the customer or molder.

(b) The customer receives a verified statement from the molder that the molder has paid the amount for which the lien is claimed.

(c) The financing statement is terminated.

(6) The priority of a lien created under this act on the same die, mold, or form shall be determined by the time the lien attaches. The first lien to attach shall have priority over liens that attach subsequent to the first lien.

It is undisputed that Quality, as the moldbuilder, has perfected liens on four molds or tools currently within the possession and use of the molder, Sejasmi, but for which Quality has not been fully paid by Takumi as its "customer," MCL 445.611(a). See MCL 445.619(1) and (2). While the lower court record reveals certain discrepancies in the amount claimed to be outstanding or owed to Quality, MCL 445.619(3) defines the "amount of the lien" as "the amount that a customer or molder owes the moldbuilder for the fabrication, repair, or modification of the die, mold, or form."

Notice of the moldbuilder's lien is accomplished through "[t]he information that the moldbuilder is required to record on the die, mold, or form under subsection (1) and the financing statement required under subsection (2)." These two items "shall constitute actual and constructive notice of the moldbuilder's lien on the die, mold, or form." MCL 445.619(3). Quality's lien as the moldbuilder "attache[d] when actual or constructive notice is received," and is not dependent on Quality's retention of possession of the mold. MCL 445.619(4).[1]

Although subsections (1) through (4) of MCL 445.619 are accepted by the litigants as having been fulfilled or complied with and are undisputed, it seems necessary to clarify one factual discrepancy reflected by the April 30, 2015 and July 1, 2015 opinions and orders, which

---

[1] Because the priority of Quality's liens is not addressed or pleaded by the parties as an issue, this Court will not discuss MCL 445.619(6).

indicate Quality's retention of liens on four and five molds, respectively.[2]  On November 17, 2014, Sejasmi and Quality entered into a stipulated order regarding the two-cavity mold (identified as Job Number 13107), which was in Quality's possession to effectuate repairs.  In accordance with the stipulated order, in exchange for Sejasmi's payment of $65,000 to Quality, Quality was to "release the tooling" and assist Sejasmi in "loading the tooling" for transport to Sejasmi's location.  Quality was to provide to Sejasmi "CAD tool drawings and designs related to the Tooling" and verification that the "Tooling is production ready."  In addition, "Quality also represents that it has *no lien* on the Tooling and that it shall not at any time place a lien on the Tooling."  Given the existence of this stipulated order, the current dispute is, therefore, focused on the remaining four molds.

Given that the fulfillment of (1) through (4) of MCL 445.619 concerning the four molds is undisputed, the disagreement involves MCL 445.619(5).  In accordance with MCL 445.619(5), Quality's lien "remains valid until the first of the following events takes place:

(a) The moldbuilder is paid the amount owed by the customer or molder.

(b) The customer receives a verified statement from the molder that the molder has paid the amount for which the lien is claimed.

(c) The financing statement is terminated."

For purposes of this appeal, MCL 445.619(5)(a) and (c) are not implicated because it is undisputed that Quality has not been "paid the amount owed by the customer or molder" and Quality's financing statement under the UCC has not been "terminated."  Hence, the determination of whether Quality's liens for the four molds have been extinguished is contingent on whether, under MCL 445.619(5), Takumi, as the "customer", "receive[d] a verified statement from" Sejasmi as "the molder", "that [Sejasmi] has paid the amount for which the lien is claimed."

Quality seeks the interpretation of the statutory language for MCL 445.619(5)(b) and asserts the language implies that the provision must be read to indicate that "the molder has paid the amount for which the lien is claimed" *to the moldbuilder.*  "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (quotation omitted).  "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Id.* (citation omitted).  "If the plain and ordinary meaning of the language of the statute is clear, judicial construction is inappropriate." *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins*, 250 Mich App 35, 37; 645 NW2d 59 (2002).  "When construing a statute, a court must read it as a whole." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).  "In

---

[2] The molds are identified as follows:  (a) Job No. 13107 – a two-cavity mold, (b) Job 13108 – an eight-cavity mold, and (c) Job Nos. 13109, 13110, and 13111 – each job number pertaining to a separate one-cavity mold.

reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002), quoting *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).

Quality seeks to have this Court read into the statutory provision language that is absent. To comply with this request would be contrary to the rules of statutory interpretation. "Nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself." *In re Schnell*, 214 Mich App 304, 309; 543 NW2d 11 (1995). Only "literal constructions that produce unreasonable and unjust results that are inconsistent with the purpose of the act [are to] be avoided." *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994). Contrary to Quality's position, enforcement of MCL 445.619(5)(b), as written, and without the additional language proposed by Quality, does not render other provisions within the subsection nugatory, specifically subsection (5)(a). Clearly, in accordance with subsection (5)(a), a lien is extinguished if either the customer or molder pays the moldbuilder. To require, as suggested by Quality, that the verified statement in subsection (5)(b) submitted by the molder to the customer must indicate that the molder paid the moldbuilder would be merely a duplication of and an additional step effectuating subsection (5)(a) rather than a separate and distinct mechanism to invalidate the lien (i.e. both 5(a) and 5(b) would simply indicate payment by the molder).

Instead, the reading of the statute as indicated by the trial court in its most recent opinion and order would suggest consistency with the purpose of the statute–to protect moldbuilders. The molder's lien statute provides different scenarios to permit moldbuilders to obtain and perfect liens on their products to facilitate receipt of payment or obtain security for such payment, along with enforcement options. While the intent of the statute is to protect moldbuilders such as Quality, it cannot be commensurately assumed that this statutory intent should be at the expense of molders such as Sejasmi that have remitted payment to customers and place them under the economic hardship of paying twice, in full, for the same product. Subsection (5)(b) only invalidates the lien when there has been a demonstration of payment, albeit by submission of a verified statement to the customer rather than the moldbuilder. The invalidation of the lien does not preclude a moldbuilder from pursuing other contractual remedies against the customer without interrupting or negatively affecting commercial production. In this instance, it is undisputed that Takumi was the entity contractually obligated to Quality. There is evidence that Sejasmi paid Takumi for the molds prepared at its behest but that Takumi failed to remit or share the proceeds of those payments with Quality. While MCL 445.619 is intended as a protection for moldbuilders, it is not a cure all for every possible wrong within a commercial interaction. In other words, although the molder's lien act is a shield for moldbuilders, Quality is attempting to use it as a sword.

While not necessary to resolve the portion of the issue pertaining to the language and application of MCL 445.619(5)(b), the trial court bolstered its ruling on this aspect by citing to the construction lien act (CLA), MCL 570.1101 *et seq.* as a corollary to the molder's lien act. MCL 570.1107 of the CLA authorizes persons or entities providing labor or materials and equipment for the improvement of real property to obtain liens to ensure payment. Consistent with the molder's lien act, the CLA also provides a statutory mechanism to extinguish the liens available under MCL 570.1107. See MCL 570.1118a(1). This Court has interpreted the

predecessor to this statutory provision, MCL 570.1203, to not only "provide for the payment of subcontractors and suppliers, but also protect homeowners from paying twice for improvements to their property where the contractor took the payment from the homeowners but did not pay the subcontractor or supplier." *Erb Lumber, Inc v Gidley*, 234 Mich App 387, 393-394; 594 NW2d 81 (1999). This appears to be the most reasonable approach to such problems to avoid unfairly burdening persons or entities that have not engaged in any wrongdoing.

This does not, however, fully resolve this matter. While not disputing that a verified complaint suffices as a "verified statement" for purposes of MCL 455.619(5)(b), Quality asserts that Sejasmi's verified complaint is deficient in that it did not reference all of the liens and was not properly served or received by the customer, Takumi. Sejasmi appears to acknowledge that its complaint did not reference all of the liens, but contends that because it affixed copies of work orders pertaining to all of the liens, that Quality's assertion is without merit. Quality ignores that Sejasmi's complaint indicated payment of a sum that exceeds the amounts claimed by Quality as due and owing, thereby meeting the requirement of MCL 455.619(5)(b) that the "verified statement" indicate or reflect "that the molder has paid the amount for which the lien is claimed."

Problematic is the issue of whether Takumi, as the customer, received the verified statement. Quality contends that the absence of a proof of service for the verified complaint for Takumi or NKL in the lower court record obviates any claim of receipt. Contrary to Quality's assertion regarding the absence of a proof of service, the trial court, in its April 1, 2015 opinion and order, stated: "Further, the verified complaint was served on Defendant Takumi, a 'customer' under [the molder's lien act.]" The trial court, in its July 1, 2015 opinion and order, repeated and referenced the earlier assertion as contained in the April 1, 2015 opinion and order, indicating: "Finally, as the Court previously held Defendant Takumi, a customer under the [molder's lien act], received a copy of the verified complaint, as is evidenced by the proof of service." (Footnote omitted.) We thus find that a question of fact remains regarding whether Sejasmi, as the molder, served a verified statement on the customer, Takumi.

Initially, a review of the register of actions and electronic record submitted by the Macomb Circuit Court does not evidence a proof of service of Sejasmi's verified complaint on Takumi, or NKL as its successor in interest. Proofs of service are available for A+ Mold and Quality. In addition, premised on the failure of Sejasmi to have effectuated service of process of the verified complaint on NKL, Quality requested the trial court's permission to file a third-party complaint against NKL, which was granted by stipulated order. A default has been subsequently entered against NKL for having failed to file an answer to the third-party complaint. In addition, throughout these proceedings, although A+ Mold has appeared, it has consistently denied that it is a proper party or a successor in interest to Takumi and A+ Mold filed a motion for summary disposition, seeking its dismissal from the litigation premised on its lack of affiliation with Takumi's actual successor in interest, NKL. A+ Mold argued that it was not incorporated until after the events forming the basis for Sejasmi's claim took place and was not liable for NKL's activities. Subsequently, the trial court granted A+ Mold's motion for summary disposition, with regard to Sejasmi's breach of contract claim in its verified complaint, finding that A+ Mold was not incorporated until June 2014, after the mold invoices concerning the molds at issue were generated (from February to October 2013) and after any of Sejasmi's payments concerning the molds were made. The trial court further found: "While Defendant Molds [sic] has assumed the Takumi DBA Plaintiff has failed to present any evidence that Defendant Molds [sic] has

assumed any of the obligations Defendant NKL incurred under the Takumi DBA." This calls into question whether Takumi received a verified statement from Sejasmi as required by MCL 445.619(5)(b), sufficient to invalidate Quality's liens.

Because this matter is before the Court on an interlocutory basis and issues remain to be resolved in the lower court, we remand the matter to the trial court for further fact finding on the issue of whether the customer received a verified statement from the molder, but affirm the trial court's reading and application of MCL 445.619(5)(b). We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto