PEOPLE v BLUNT

Docket No. 275852. Submitted June 4, 2008, at Lansing. Decided January 13, 2009, at 9:10 a.m. Leave to appeal denied, 483 Mich ___.

Donovan A. Blunt tendered in the Saginaw Circuit Court a conditional plea of no contest to charges of assault with intent to do great bodily harm less than murder and unlawful use of a harmful chemical substance after throwing heated cooking oil at his housemate. The court, Fred L. Borchard, J., imposed prison sentences of 6½ to 10 years for the assault conviction and 20 to 40 years for the conviction of unlawful use of a harmful chemical substance. The defendant appealed.

The Court of Appeals *held*:

1. A person who uses a harmful chemical substance in a manner that inflicts a serious impairment of bodily function is guilty of a felony that is punishable with imprisonment for life or any term of years. MCL 750.200i(1)(b), (2)(d). MCL 750.200h(i) defines "harmful chemical substance" as a solid, liquid, or gas that through its chemical or physical properties, alone or in combination with one or more other chemical substances, can be used to cause death, injury, or disease in humans, animal, or plants. The heated cooking oil in this case was not a harmful chemical substance. The statutory definition of "harmful chemical substance" refers to substances that possess an inherent or intrinsic ability or capacity to cause death, illness, injury, or disease. The heated cooking oil, through its chemical or physical properties, did not cause or contribute to the victim's injuries. The defendant's conviction of unlawful use of a harmful chemical substance must be vacated.

2. The case must be remanded for resentencing because offense variables 1 (victim subjected to a harmful chemical substance), MCL 777.21(1)(b), and 2 (offender used a harmful chemical substance), MCL 777.32(1)(a), of the sentencing guidelines were improperly scored when determining the sentence for the assault conviction. However, the circuit court properly scored 50 points for offense variable 7 (the victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety of the victim suffered during the

offense). MCL 777.37(1)(a). The circuit court correctly determined that the defendant had treated the victim sadistically, that is, the defendant subjected the victim to prolonged pain or humiliation to produce suffering for the victim or gratification for the defendant. MCL 777.37(3).

Affirmed in part, reversed in part, and remanded for resentencing.

CRIMINAL LAW — UNLAWFUL USE OF A HARMFUL CHEMICAL SUBSTANCE — HEATED COOKING OIL.

A harmful chemical substance, for purposes of the statutory provisions that make it a felony to use a harmful chemical substance in a manner that inflicts a serious impairment of a bodily function, is one that has an inherent or intrinsic ability or capacity to cause death, illness, injury, or disease; heated cooking oil is not a harmful substance as contemplated in those provisions (MCL 750.200h[i]; MCL 750.200i[1][b], [2][d]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Janet M. Boes*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for the defendant.

Before: GLEICHER, P.J., and FITZGERALD and HOEKSTRA, JJ.

GLEICHER, P.J. Defendant entered a conditional plea of no contest to charges of assault with intent to do great bodily harm less than murder, MCL 750.84, and unlawful use of a harmful chemical substance, MCL 750.200i(1)(b). The circuit court sentenced him to concurrent prison terms of 6¹/₂ to 10 years' imprisonment for the assault conviction and 20 to 40 years' imprisonment for the conviction of unlawful use of a harmful chemical substance. Defendant appeals by delayed leave granted. We affirm the assault conviction, vacate defendant's conviction under MCL 750.200i(1)(b), and remand for resentencing.

Defendant lived next door to the victim in a Saginaw rooming house. On December 29, 2005, defendant heated cooking oil in a pot, took the pot to the victim's room, and knocked on the victim's door. When the victim opened the door, defendant threw the hot oil at the victim's face. The victim suffered severe burns of his face, neck, chest, and esophagus that necessitated extensive skin grafting.

Defendant first contends that the trial court improperly convicted him of violating MCL 750.200i(1)(b) because heated cooking oil does not qualify as a "harmful chemical substance." When construing a statute, this Court must ascertain and give effect to the Legislature's intent. *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). "The first step in that determination is to review the language of the statute itself." *Id.* (quotation marks and citation omitted). We construe statutory language according to the common and approved meaning of the words, but when a statute employs technical terms of art, " 'it [is] proper to explain them by reference to the art or science to which they [are] appropriate.' " *West Bloomfield Charter Twp v Karchon*, 209 Mich App 43, 51; 530 NW2d 99 (1995), quoting *Corning Glass Works v Brennan*, 417 US 188, 201; 94 S Ct 2223; 41 L Ed 2d 1 (1974). In discerning legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *People v Hill*, 269 Mich App 505, 515; 715 NW2d 301 (2006). The Court must avoid construing a statute in a manner that renders statutory language nugatory or surplusage. *Id.* " 'We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature.' " *Id.*, quoting *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159-160; 627 NW2d 247 (2001). When discerning legislative intent, a particular word in one statutory section must be interpreted in conjunction

with every other section, "so as to produce, if possible, a harmonious and consistent enactment as a whole." *Grand Rapids v Crocker*, 219 Mich 178, 183; 189 NW 221 (1922); see also *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003) (invoking as a statutory interpretation aid the doctrine of *noscitur a sociis*, "i.e., that a word or phrase is given meaning by its context or setting") (quotation marks and citation omitted). This Court considers both the plain meaning of critical words or phrases used in the statute, and their placement and purpose in the statutory scheme. *Hill, supra* at 515.

The statute at issue, MCL 750.200i, provides in pertinent part as follows:

> (1) A person shall not manufacture, deliver, possess, transport, place, use, or release any of the following for an unlawful purpose:
>
> (a) A harmful biological substance or a harmful biological device.
>
> (b) A harmful chemical substance or a harmful chemical device.
>
> (c) A harmful radioactive material or a harmful radioactive device.
>
> (d) A harmful electronic or electromagnetic device.

A person who violates subsection 1 in a manner that inflicts a "serious impairment of a body function" is subject to imprisonment for life or any term of years. MCL 750.200i(2)(d).

In MCL 750.200h, our Legislature defined many of the terms used in MCL 750.200i:

> (f) "Harmful biological device" means a device designed or intended to release a harmful biological substance.
>
> (g) "Harmful biological substance" means a bacteria, virus, or other microorganism or a toxic substance derived

from or produced by an organism that can be used to cause death, injury, or disease in humans, animals, or plants.

(h) "Harmful chemical device" means a device that is designed or intended to release a harmful chemical substance.

(i) "Harmful chemical substance" means a solid, liquid, or gas that through its chemical or physical properties, alone or in combination with 1 or more other chemical substances, can be used to cause death, injury, or disease in humans, animals, or plants.

(j) "Harmful radioactive material" means material that is radioactive and that can be used to cause death, injury, or disease in humans, animals, or growing plants by its radioactivity.

(k) "Harmful electronic or electromagnetic device" means a device designed to emit or radiate or that, as a result of its design, emits or radiates an electronic or electromagnetic pulse, current, beam, signal, or microwave that is intended to cause harm to others or cause damage to, destroy, or disrupt any electronic or telecommunications system or device, including, but not limited to, a computer, computer network, or computer system.

(l) "Harmful radioactive device" means a device that is designed or intended to release a harmful radioactive material.

We must consider whether the heated cooking oil thrown by defendant constitutes a "harmful chemical substance" in the context of MCL 750.200i. Indisputably, cooking oil is a chemical substance. However, "through its chemical . . . properties," cooking oil cannot "cause death, injury, or disease." Rather, the chemical properties of cooking oil facilitate the use of this substance as a common, everyday foodstuff. We reject the notion that the Legislature intended that ordinary and otherwise perfectly safe liquids can qualify as "harmful chemical substance[s]" merely because one may incorporate them into the commission of an as-

saultive crime. The definitions of the terms describing
other "harmful" items identified in MCL 750.200h and
MCL 750.200i reinforce our conclusion that cooking oil
does not meet the definition of a harmful chemical
substance, because the statutory definitions refer to
substances or devices that possess an inherent or in-
trinsic ability or capacity to cause death, illness, injury,
or disease.

The prosecutor argues that because defendant
heated the oil, it falls within the portion of the defini-
tion addressing a chemical's physical properties. Ac-
cording to the prosecutor, the following definitional
language encompasses heated cooking oil: " 'Harmful
chemical substance' means a solid, liquid, or gas that
through its chemical *or physical properties* . . . can be
used to cause death, injury or disease . . . ." MCL
750.200h(i) (emphasis added). The Legislature did not
further define the term "physical properties." Because
"physical properties" is a term of art derived from
chemistry and related scientific fields, we refer to a
scientific definition of the phrase.

> Physical properties of solids, liquids, and gases are those
> characteristics that can be observed and those that de-
> scribe its behavior under certain conditions. Properties
> such as volume and mass depend on the amount of a
> substance that is being observed. Properties that do not
> depend on the quantity include the melting point of a solid
> and the boiling point of a liquid as well as density, color,
> hardness, odor, taste, elasticity, and tensile strength. [New
> York Public Library Science Desk Reference (1995), p 236.]

This definition comports with our Legislature's defini-
tion of the same term, which appears in the Natural
Resources and Environmental Protection Act, MCL
324.101 *et seq*. In MCL 324.20117(11)(b), the Legisla-
ture defined the "physical properties of a hazardous
substance" as including "its boiling point, melting

point, flash point, specific gravity, vapor density, solubility in water, and vapor pressure at 20 degrees Celsius."

The "physical properties" of cooking oil are those that can be observed and that describe the behavior of cooking oil under various circumstances. Those physical properties include its boiling point, density, color, odor, taste, and solubility in water. But these physical properties do not themselves render cooking oil a harmful or dangerous substance. The statutory definition includes a requirement that the chemical substance must possess harmful qualities "*through* its . . . physical properties." (Emphasis supplied.) Because the physical properties of the cooking oil did not cause or contribute to the victim's injuries, the term "harmful chemical substance" simply does not encompass the cooking oil, even when heated by defendant and used to injure the victim. Stated differently, the victim did not sustain injury "through [the] chemical or physical properties" of the cooking oil. MCL 750.200h(i), MCL 750.200i(1)(b).[1]

We also reject that an otherwise harmless chemical substance may be rendered harmful by an intervening act, and thereby fall within the statutory definition in MCL 750.200h. To interpret the statutory language in this manner would render nugatory the word "harm-

---

[1] In contrast, the physical properties of some other chemical substances render these substances harmful. For example, hydrogen gas possesses an important "physical property" that brings it within MCL 750.200h(i). "Hydrogen gas is highly flammable and will burn in air at a very wide range of concentrations between 4% and 75% by volume." Hydrogen, Wikipedia, <http://en.wikipedia.org/wiki/hydrogen> (accessed on January 5, 2009). "When mixed with oxygen across a wide range of proportions, hydrogen explodes upon ignition." *Id.* (accessed on December 15, 2008). This "physical property" of hydrogen gas permits it to qualify as a harmful chemical substance, because "through its . . . physical properties," the gas can be readily ignited, and used to cause death or injury.

ful" as a modifier of the term "chemical substance." Reviewing the statute as a whole, we conclude that the Legislature's use of the adjective "harmful" before the terms "chemical substance," "biological device" "biological substance," "chemical device," "radioactive material," "electronic or electromagnetic device," and "radioactive device" evinces its intent to identify materials or things possessing intrinsically dangerous, noxious, or pernicious qualities. The Legislature, under MCL 750.200i, intended to punish only those who use a certain class of "harmful" objects or substances to injure others. Construing the statute as an harmonious whole, we conclude that, when enacting this statute, the Legislature did not contemplate that it could be applied to punish a defendant who inflicts injury by altering the physical characteristics of an otherwise harmless object, substance, or device.

Virtually any liquid, from maple syrup to laundry detergent, may become a lethal weapon when boiled. Water, an otherwise innocuous "chemical substance," potentially could be a dangerous weapon when frozen and thrown in a victim's face as a hard-packed snowball. Here, the Legislature's insertion of the term "harmful" reflects its intent that the statute apply to substances capable of causing harm "through [their] chemical or physical properties," rather than to substances that are commonplace and otherwise inoffensive. Were we to interpret the statute as suggested by the prosecutor, we would essentially read out the word "harmful," given that innumerable safe chemical substances may become dangerous when someone alters their physical properties. Because we must give effect to every word used in a statute, we conclude that MCL 750.200h(i) does not include heated cooking oil. *Hill, supra* at 515. Accordingly, we vacate defendant's conviction under MCL 750.200i(1)(b).

In light of our decision to vacate defendant's conviction under MCL 750.200i(1)(b), we hold that the circuit court improperly scored offense variables (OV) 1 (victim subjected to a harmful chemical substance), MCL 777.31(1)(b), and 2 (offender used a harmful chemical substance), MCL 777.32(1)(a), when calculating the penalty for his conviction of assault with intent to do great bodily harm less than murder under MCL 750.84. Therefore, we remand for resentencing based on properly scored offense variables.

Defendant also challenges the circuit court's scoring of 50 points for OV 7, which is proper where "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The circuit court determined that defendant treated the victim with sadism, which is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). Defendant's conduct subjected the victim to extreme pain and extensive and serious injuries. The nature and circumstances of the offense support a reasonable inference that defendant attacked the victim for the purpose of producing suffering. Thus, the circuit court did not abuse its discretion by scoring 50 points for OV 7. *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

We affirm defendant's assault conviction, reverse his conviction under MCL 750.200i(1)(b), and remand for resentencing. We do not retain jurisdiction.