PEOPLE v PROMINSKI

Docket No. 309682. Submitted June 11, 2013, at Grand Rapids. Decided August 22, 2013, at 9:05 a.m.

John J. Prominski, a pastor at Resurrection Life Church, was charged in the 64th District Court with violating the Child Protection Law, MCL 722.621 *et seq.*, by failing to report child abuse after a member of the church expressed her concerns to defendant that her husband might be sexually abusing their daughters. The court, Raymond P. Voet, J., granted defendant's motion to dismiss the charge, concluding that the communication was privileged and that the privilege was not abrogated by MCL 722.631 because it was a confession or similarly confidential communication. The Ionia Circuit Court, Suzanne H. Kreeger, J., affirmed. The prosecution appealed by leave granted.

The Court of Appeals *held*:

Various individuals, including members of the clergy, are required to report suspected child abuse under MCL 722.623(1). Under MCL 722.631, any legally recognized privileged communication, except that between attorney and client or that made to a member of the clergy in his or her professional character in a confession or similarly confidential communication, is abrogated and shall not constitute grounds for excusing a report otherwise required to be made. The plain language of the statute indicates that confessions and other communications that are similarly confidential fall under the exception when the communication is made to a member of the clergy in his or her professional character. A similarly confidential communication is one that the church member expects to be kept private or secret. In this case, the district court found that the mother went to defendant for guidance and expected that the conversation would be kept private. The circuit court affirmed, noting that the mother had approached defendant in his role as pastor, seeking pastoral guidance with an expectation of privacy. The factual findings of the lower courts were not clearly erroneous. Thus, while the mother did not make a confession, she had a similar expectation that the communication would not be shared. Therefore, the communica-

tion fell under the exception in MCL 722.631, and defendant was not required to make a report under MCL 722.623(1)(a).

Affirmed.

CRIMINAL LAW — CHILD PROTECTION LAW — CHILD ABUSE REPORTING REQUIRE-
MENTS — MEMBERS OF THE CLERGY — CONFESSIONS AND SIMILARLY CONFI-
DENTIAL COMMUNICATIONS.

Under MCL 722.631, any legally recognized privileged communica-
tion, except that between attorney and client or that made to a
member of the clergy in his or her professional character in a
confession or similarly confidential communication, is abrogated
and shall not constitute grounds for excusing a failure to report
suspected child abuse under the Child Protection Law, MCL
722.621 *et seq.*; a "similarly confidential communication" is one
that the church member expects to be kept private or secret.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Ronald J. Schafer*, Prosecuting Attorney, and *Kristen Stinedurf*, Assistant Prosecuting Attorney, for the people.

*Bruce A. Block* for defendant.

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM. We are asked in this case whether a clergyman is obligated under the Child Protection Law, MCL 722.621 *et seq.*, to report child abuse when he is told by a parishioner that the parishioner's husband is abusing her children and she is seeking the pastor's advice and guidance on how to proceed. We hold that, under those circumstances, a clergyman is not obligated to report the suspected child abuse to police.

In 2009, defendant was the pastor at Resurrection Life Church in Ionia and was approached by a parishioner regarding her concerns that her husband was abusing her daughters. The parishioner testified as follows at a hearing to dismiss the charges:

> I didn't know what to do, because I had found out that my husband at the time had my girls touch themselves [in their genital areas], and I went to [defendant], because I didn't know what to do--if I should--I wanted [my husband] to get help and I didn't know if I should get help or what we should do. So I went to him to find out what to do, because I wanted [my husband] to get help and I didn't know what--if--it was something I wasn't sure if it was crossing the line or not crossing the line, because [my husband] admitted to it at the time, and said he didn't watch. The girls said he didn't look at him [sic], so I didn't know what to do.

She further testified that she went to defendant because he was her pastor, she did not know what to do, and she wanted to know what he thought—whether she should make a report when her husband did not actually touch the girls and he had a "weird reason" for doing it.

When asked if she thought defendant would keep the information confidential, she stated, "I expected Pastor John to know what to do with it. If we had to go turn it in, I would--that we would have to go turn it in, but he thought he could help [my husband]." She did not expect defendant to share this information at a worship service or with people in the congregation. She was questioned regarding her expectation of privacy:

*Q.* You expected him to keep it private?

*A.* Between our family, yes.

*Q.* Confidential?

*A.* Or the authorities--whoever needed to know[.]

She further testified that she went to defendant for family and spiritual guidance and spiritual advice. She also expected guidance on whether this needed to be reported to law enforcement. She told defendant she was willing to report it if necessary. She asked defen-

dant to meet with her husband. She could not remember if she met with defendant at the church, but she thought she had called him. She testified that she talked with him alone and no one else was listening to the conversation.

The mother went to defendant again in 2011 after an additional incident. She explained:

> I woke up to my daughter screaming and I asked her--[my husband] was in her room and I asked her what happened? And she said I hate you, I hate you--she said--I woke up to her screaming I hate you, I hate you, don't ever touch me again. I went in there and she said--I asked her what happened (crying)? And she said that he was touching her.

When she went to defendant in 2011, he told her she needed to report it or else he would. It was during the investigation of this incident that the police learned about the 2009 report by the mother to defendant.

Defendant was charged with failure to report child abuse. MCL 722.633(2). He moved in district court to dismiss the charge based on privilege. The district court determined that the privilege applied and dismissed the charges. The prosecution appealed in circuit court, which affirmed. The prosecution now appeals in this Court by leave granted. We affirm.

Various individuals, including members of the clergy, are required under MCL 722.623(1) to report suspected child abuse. MCL 722.631 abrogates privilege with respect to the reporting statute, except for the attorney-client and the clergy-parishioner privileges:

> Any legally recognized privileged communication except that between attorney and client or that made to a member of the clergy in his or her professional character in a confession or similarly confidential communication is abrogated and shall not constitute grounds for excusing a

report otherwise required to be made or for excluding evidence in a civil child protective proceeding resulting from a report made pursuant to this act.

Two other statutes address communications with members of the clergy. MCL 600.2156 specifically prohibits disclosure of confessions:

> No minister of the gospel, or priest of any denomination whatsoever, or duly accredited Christian Science practitioner, shall be allowed to disclose any confessions made to him in his professional character, in the course of discipline enjoined by the rules or practice of such denomination.

MCL 767.5a(2) provides the evidentiary privilege for communications between members of the clergy and members of a church:

> Any communications between attorneys and their clients, *between members of the clergy and the members of their respective churches,* and between physicians and their patients *are hereby declared to be privileged and confidential when those communications were necessary to enable* the attorneys, *members of the clergy,* or physicians *to serve as such* attorney, *member of the clergy,* or physician.

The issue is whether the mother communicated with defendant "in his . . . . professional character in a confession or similarly confidential communication . . . ." MCL 722.631. There is no dispute that defendant was a member of the clergy or that the mother talked with defendant in his professional character. There appears to be no Michigan case applying MCL 722.631 in a context similar to the instant case.

When interpreting a statute, the primary goal is to "give effect to the intent of the Legislature." *People v Barrera,* 278 Mich App 730, 735; 752 NW2d 485 (2008). "The objective of statutory interpretation is to discern the intent of the Legislature from the plain language of the statute." *Id.* at 735-736. Statutory interpretation

begins "by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.* at 736 (quotation marks and citation omitted). When undefined by the statute, a "word or phrase must be accorded its plain and ordinary meaning . . . ." *People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012) (quotation marks and citation omitted). "If a statute does not expressly define its terms, a court may consult dictionary definitions." *People v Gregg*, 206 Mich App 208, 211-212; 520 NW2d 690 (1994). Additionally, a statute should be considered as a whole "to harmonize its provisions and carry out the purpose of the Legislature." *People v Blunt*, 282 Mich App 81, 83; 761 NW2d 427 (2009) (quotation marks and citation omitted). Further, when interpreting a statute, "every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011) (quotation marks and citation omitted).

This Court, in *People v Bragg*, 296 Mich App 433, 452-453; 824 NW2d 170 (2012), considered the meaning of "privileged communications" and "confidential communications" in the context of analyzing MCL 767.5a(2):

> In legal parlance, "privileged communications" are "[t]hose statements made by certain persons within a protected relationship such as . . . priest-penitent . . . which the law protects from forced disclosure on the witness stand . . . ." Black's [Law Dictionary] (6th ed), p 1198; see also *Webster's* [*New World Dictionary of the American Language* (2d college ed)], p 1131 (stating that a "privileged communication" is a statement "that one can-

not legally be compelled to divulge, as that to a lawyer from his client"). "Confidential communication[s]" include "[p]rivileged communications such as those between ... confessor-penitent" but also include "statement[s] made under circumstances showing that [the] speaker intended [the] statement only for [the] ears of [the] person addressed ...." Black's (6th ed), p 298; see also *Webster's*, p 297 (stating that "confidential" means "told in confidence; imparted in secret").

The word "confidential" is defined as "spoken, written, or acted on in strict confidence; secret; private." *Random House Webster's College Dictionary* (1997). Thus, the plain language of the statute, considering the dictionary definition of "confidential" and the definition of "confidential communication" as set forth by this Court in *Bragg*, supports that a "similarly confidential communication" is one that the church member expects to be kept secret or private.

The prosecution appears to argue that "similarly confidential communication" must only refer to confessional communications because the prosecution's position is that conversations are only covered if the church member discusses his or her own actions. Presumably, the prosecution reads "similarly" to relate to the word "confession," and relying on that premise the prosecution concludes that "similarly confidential communication" refers to only communications that are confessional in nature. However, when interpreting a statute, a construction that "render[s] any part of the statute surplusage or nugatory" should be avoided. *Peltola*, 489 Mich at 181. The prosecution's interpretation, that the communication must concern the speaker's own actions, renders the entire phrase "similarly confidential communication" as surplusage because it would have the same meaning as "confession." The word "confession" is first defined as "acknowledgment; avowal;

admission." *Random House Webster's College Dictionary* (1997). The second definition of "confession" is "acknowledgment or disclosure of sin, [especially] to a priest to obtain absolution." *Id.* The word "avowal" is defined as "an open statement of affirmation; frank acknowledgment or admission." *Id.* The prosecution's position ignores the rules of statutory construction.

In the statute at issue, MCL 722.631, "similarly" modifies "confidential communication." When construing a statute, the place and purpose of words in the statutory scheme are considered. *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010). "[S]tatutory language must be read within its grammatical context." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 414; 766 NW2d 874 (2009). An adjective must modify a noun or pronoun. See *In re Forfeiture of $5,264*, 432 Mich 242, 254 n 10; 439 NW2d 246 (1989). The adjective "confidential" modifies the noun "communication." That adjective is further modified by the placement of the adverb "similarly" before it. An adverb can modify an adjective. See *id.* at 254 n 9; *Random House Webster's College Dictionary* (1997), p 19 (defining "adverb"). Thus, the plain language of the statute clearly reveals that the privilege applies to confessions and other communications that are similarly confidential.

Moreover, MCL 722.631 refers to "a confession *or* similarly confidential communication . . . ." (Emphasis added.) The word "or" "indicates an alternative or choice between two things." *Beauregard-Bezou v Pierce*, 194 Mich App 388, 394; 487 NW2d 792 (1992). Thus, while "confession" refers to an acknowledgment or an admission, "similarly confidential communication" refers to a communication for which the member of the church has an expectation the communication will be

kept secret or private, similar to the expectation they would have for a confession. This interpretation also properly avoids rendering "similarly confidential communication" redundant and surplusage.

Additionally, MCL 767.5a(2), the evidentiary privilege, makes "[a]ny communications . . . privileged and confidential when those communications were necessary to enable the . . . members of the clergy . . . to serve as such . . . member of the clergy . . . ." The *Bragg* decision suggested that this included communications in which the clergy helped the "spiritually sick" or provided "consolation to suppliants who [came] in response to the call of conscience" and could include disclosures made during a "counseling" session in an informal setting. *Bragg*, 296 Mich App at 459-462 (quotation marks and citation omitted). This squarely fits the circumstances in the case at bar, in which the mother approached her pastor for his advice on how to handle this circumstance happening in her family.

The differences between MCL 600.2156 and MCL 767.5a(2) are also instructive. MCL 600.2156 generally prohibits disclosure of confessions and only refers to "any confessions made to [a minister, priest, or Christian Science practitioner] in his professional character, in the course of discipline enjoined by the rules or practice of such denomination." On the other hand, MCL 767.5a(2), as previously noted, refers more broadly to communications that are necessary for the member of the clergy to serve as such. The differing language used in both statutes demonstrates the Legislature's ability to craft statutes that only implicate confessions and to craft statutes implicating additional communications. Turning to MCL 722.631, it refers to both "a confession" and to a "similarly confidential communication." Thus,

MCL 722.631, like MCL 767.5a(2), clearly refers to more than just confessions.

The prosecution briefly raises some additional arguments that we also briefly address. First, the prosecution, relying on an unpublished opinion of this Court, argues that the privilege does not apply when a third party relays information to the clergyman. This would apply to the "confession" aspect of the privilege, but not to the "similarly confidential communication" aspect. Next, the prosecution argues that defendant's own statements reflect that he did not believe that he was prevented from reporting the abuse because of privilege. But we fail to see the relevance of defendant's legal expertise with respect to the reporting statute or the law of privilege. Finally, the prosecution argues that the mother had expressed her willingness to waive any privilege. There is, however, a distinction between being willing to waive a privilege and actually waiving it. We are unaware of any evidence that the mother actually requested that defendant report her husband's behavior; rather, she asked defendant to meet with her husband. Indeed, the entire purpose of her consultation with defendant was to make the decision whether she should report it and, apparently, she made the decision (in 2009) not to report the behavior and, instead, rely on her husband seeking counseling and reforming his behavior.

For these reasons, we hold that under MCL 722.631 a communication is within the meaning of "similarly confidential communication" when the church member does not make an admission, but has a similar expectation that the information will be kept private and secret. In the case at bar, the district court made a finding of fact that the mother went to defendant "for guidance, advice and expected that the conversation be

kept private." The district court determined, "I can't find anything but that this was done within exactly what the privilege was intended to target" and concluded that MCL 722.631 applied. The circuit court affirmed this factual finding and noted that the mother "was approaching [defendant] in his role as a Pastor, that she was seeking his pastoral guidance and that for that reason, there was the expectation of privacy." The circuit court also noted that she "clearly testified as well that she did expect for this to be a confidential communication between her and within her family." We are not persuaded that these factual findings were clearly erroneous. See *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Thus, in this case, although the mother did not make a confession, she had a similar expectation the communication would not be shared. Therefore, the communication fell under MCL 722.631, and defendant was not required to make a report pursuant to MCL 722.623(1)(a). The motion to dismiss was properly granted.

Affirmed.

BORRELLO, P.J., and SAWYER and SERVITTO, JJ., concurred.