# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DANIEL AARON RONQUILLO,

      Defendant-Appellant.

UNPUBLISHED
December 23, 2014

No. 317782
Jackson Circuit Court
LC No. 12-004525-FC

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of first-degree child abuse, MCL 750.136b(2). We affirm.

The victims in this case are CA, who was almost two years old at the time of the incident underlying this prosecution, and BA, who was almost one year old at the time. The victims' mother was working two jobs that day while defendant stayed home with her children. Between jobs, the victims' mother returned home, and before leaving for her second job, she put CA and BA in the bathtub. Later, a woman came to the home to buy prescription drugs from defendant and discovered that the children had been severely burned. She called 911. The children were taken to a local hospital and then airlifted to Mott Children's Hospital, where they would remain for two months.

Dr. Bethany Mohr, the director of the Child Protection Team at Mott Children's Hospital, opined that both children had been physically abused. Mohr testified that the children had deep burns caused by being exposed to water with a temperature of approximately 140 degrees. She explained that the majority of the burns were third-degree burns that would require skin grafting. She explained how there were clear lines between burned skin and unburned skin. She also described how the children had "stocking burns" on their feet. She testified that these are typically characteristic "of physical abuse from someone forcefully immersing a child in water." She then described "donut sparing" on each child's buttocks, which indicated to her that each child would have had to have been held down against the bottom of the bathtub before the hot

-1-

water touched their skin.[1]  She explained how the children have had several surgeries, how their burns will never completely heal, and how they will always have some scaring and disfigurement.

Defendant argues on appeal that because the prosecution did not file a habitual-offender notice timely, he is entitled to resentencing as a non-habitual offender.  We review this unpreserved claim of error for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Where plain error occurs, "[r]eversal is warranted only when the . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of the judicial proceeding independent of the defendant's innocence."  *Id*. at 763-764 (citations and internal quotation marks omitted).

Under MCL 769.13, the prosecutor may seek to enhance a defendant's sentence as a habitual offender "by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense."  MCL 769.13(1).  In this case, however, defendant was not arraigned and did not waive arraignment.

In *People v Marshall*, 298 Mich App 607, 627; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013), the defendant argued that the habitual-offender notice was not timely filed because it was filed more than 21 days after he was bound over to circuit court.  *Id*.  In rejecting this argument, this Court found that if a defendant is not arraigned and does not waive arraignment, "the statutory period for filing [a] habitual-offender notice was never actually triggered and the notice could not be considered untimely."  *Id*.  We went on to hold that "MCL 769.13(1) clearly contemplates that in the absence of an arraignment, the period for filing the habitual-offender notice is to be measured from the date the information charging the underlying offense is filed."  *Id*.  Here, the original information, which includes notice of sentence enhancement, was filed on October 10, 2012.  Notice was timely.

Defendant contends that *Marshall* was wrongly decided, citing *People v Brown*, 492 Mich 684; 822 NW2d 208 (2012), where our Supreme Court held that before a defendant enters a guilty plea, he has a right to be informed that he is subject to an enhanced sentence as a habitual offender.  Therefore, defendant states, it follows that a defendant who proceeds to trial has a similar right.  Without accepting the premise of defendant's argument, we note that trial did not begin until seven months after he received notice that he was subject to sentencing as a habitual offender.  See *People v Rush*, 118 Mich App 236, 240-241; 324 NW2d 586 (1982) (holding that a defendant was afforded fair notice of the habitual-offender charge where several more weeks elapsed before defendant went to trial).  No plain error is shown.

---

[1] Mohr testified that this type of burning occurs because when the victim is held down; the hot water would not come into contact with the skin pressed against the bathtub.

Defendant next argues that the trial court erred in scoring offense variable (OV) 7 at 50 points because his actions were not in excess of what the underlying offense requires. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts . . . satisfy the scoring conditions . . . is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 7 is to be scored at 50 points when a victim is "treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered" during an offense involving aggravated physical abuse. MCL 777.37(1)(a). "Sadism" includes "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).

Defendant fails to articulate why the trial court erred in finding that defendant's conduct was "sadistic, excessive brutality," other than merely concluding defendant's acts were not beyond what is necessary for first-degree child abuse. A conviction of first-degree child abuse under MCL 750.136b(2) requires that a "person knowingly or intentionally cause[] serious physical or serious mental harm to a child." MCL 750.136b(2). When defendant left the children on the floor without calling for help, this went above and beyond the minimum required to commit the offense. Defendant argues, however, that "if first-degree child abuse occurred inside the bathroom then it *continued* out into the living room by the delay in calling 911 which the trial court used to support the scoring." This argument is unsupported and makes no difference in this analysis. Whether the abuse occurred when defendant submerged the children in the scalding water, when defendant left the children in the living room while not calling for help, or any combination of the two, it does not change the fact that defendant's conduct subjected those children to extreme or prolonged pain or humiliation in excess of that required for conviction. "The nature and circumstances of the offense support a reasonable inference that defendant attacked the victim for the purpose of producing suffering." *People v Blunt*, 282 Mich App 81, 89; 761 NW2d 427 (2009). Therefore, because the trial court did not err in finding that sufficient facts existed to score OV 7 at 50 points, defendant is not entitled to resentencing.

Lastly, defendant argues that the trial court's rationale for its upward departure was insufficient because it centered on facts already taken into account by the offense itself and sentencing guidelines. We review whether a particular factor for departing from the sentencing guidelines exists for clear error. *People v Michael Anderson*, 298 Mich App 178, 184; 825 NW2d 678 (2012). We review de novo a trial court's determination of whether a factor is objective and verifiable, and whether the factors relied on by the trial court provide substantial and compelling reasons to depart from the guidelines for an abuse of discretion. *Id.* The extent of any departure is reviewed for an abuse of discretion. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A trial court abuses its discretion if the minimum sentence imposed falls outside of the range of principled outcomes." *Id.*

"A court may depart from the appropriate sentence range . . . if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." MCL 769.34(3). "Substantial and compelling reasons for departure exist only in exceptional cases." *Smith*, 482 Mich at 290. "[S]ubstantial and compelling reasons must be objective and verifiable and may be based on conduct occurring before or after the defendant's arrest." *People*

*v Shinholster*, 196 Mich App 531, 534; 493 NW2d 502 (1992). "For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history." *Smith*, 482 Mich at 290. "The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds . . . that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b).

Defendant states in a conclusory fashion that the trial court's rationale for departure centered on facts already taken into account, including the nature of the offense itself and guideline variables such as OV 3 and OV 7. In making its ruling, the trial court expressly found that "the guidelines do not adequately take" those characteristics into account. In this case, a one-year-old and a two-year-old child were burned so badly that their skin peeled off after being intentionally held under 140-degree bath water. And defendant never summoned help. Instead, the children were left to suffer for at least 40 minutes before a woman who came to buy prescription drugs from defendant called 911.

Expert testimony indicated that the children have gone through several surgeries since this incident. Expert testimony also indicated that further surgeries would be required because the children's skin was so burned it would not grow back or regenerate. Although OV 3 takes into account life-threatening and permanent injuries and OV 7 takes into account sadism as discussed above, the trial court's conclusion that the nature of this offense, specifically the fact the victims were very young and defenseless children solely in defendant's care at the time of the offense, and the victims' life-long injuries were not adequately accounted for in the sentencing guidelines did not fall beyond the range of principled outcomes. *Smith*, 482 Mich at 300. Accordingly, the trial court did not abuse its discretion in finding that such factors served as substantial and compelling reasons to make a five-month upward departure from the guidelines.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-4-