*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re G. BUTCHER, Minor.

UNPUBLISHED
May 7, 2020

No. 350439
Shiawassee Circuit Court
Family Division
LC No. 15-013672-NA

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

Respondent raises several challenges to the termination of her parental rights. Her primary argument focuses on the language of MCL 712A.19b(1) which applies to cases in which termination is not sought at the initial disposition. The statute otherwise provides that:

> if a child remains in foster care in the temporary custody of the court following a review hearing . . . or a permanency planning hearing . . . or if a child remains in the custody of a guardian or limited guardian, upon petition of the prosecuting attorney, . . . or of the child, guardian, custodian, concerned person, agency, or children's ombudsman . . . the court shall hold a hearing to determine if the parental rights to a child should be terminated and, if all parental rights to the child are terminated, the child placed in permanent custody of the court.

Reasonably interpreted, respondent contends, this statute means that a court is empowered to terminate a parent's right's *only* when a child remains in foster care or a guardianship at the time of a termination hearing. GB, the child at issue in this case, was safely and securely placed with her father when the termination hearing commenced. Therefore, respondent urges, the trial court lacked the statutory authority to terminate her parental rights.

This Court rejected this argument in *In re Marin*, 198 Mich App 560, 568; 499 NW2d 400 (1993), and reaffirmed *Marin* in *In re Medina*, 317 Mich App 219, 229; 894 NW2d 653 (2016). The majority rejects respondent's invitation to revisit these cases, invoking MCR 7.215(C)(2). I write separately to suggest that although the *Marin* Court's approach to statutory interpretation was somewhat problematic, the statute does permit termination in circumstances such as this.

Our goal in interpreting a statute is to find a reasonable construction that gives effect to the Legislature's intent. *People v Blunt*, 282 Mich App 81, 83; 761 NW2d 427 (2009). We ascribe meaning "to every word, phrase, and clause in the statute," endeavoring to make all of the enactment operative and consequential. *Id*. Adhering to those precepts compels the conclusion that termination of parental rights may occur despite a child's placement with a nonrespondent parent.

MCL 712A.19b(1) identifies three circumstances in which trial courts *must* conduct termination hearings. All three involve situations in which the child resides outside the parental home: foster care, guardianship following a permanency planning hearing, and guardianship following "a review hearing under section 19(3)." The statute unambiguously declares that with regard to such children, "the court *shall* hold a hearing to determine if the parental rights to a child should be terminated[.]" MCL 712A.19b(1) (emphasis added). The word "shall" imposes a mandatory obligation. See *Oakland Co v State of Mich*, 456 Mich 144, 154; 566 NW2d 616 (1997). The Legislature clearly expressed in MCL 712A.19b(1) that a child's placement in foster care or the existence of a guardianship mandate a termination hearing.

Logically, however, that does not mean that the court is *precluded* from holding a termination hearing under other circumstances. Nor does the statutory text suggest that the conditions under which a hearing are obligatory concomitantly establish the *exclusive* preconditions for conducting a hearing. Indeed, MCL 712A.19b(1) specifically contemplates that one parent's rights may be terminated while the other parent retains his or her rights, which creates a reasonable inference that the Legislature intended the statute to apply even when a child was in the custody of a nonrespondent parent. Parsed to the pertinent language, MCL 712A.19b(1) provides that "if a child remains in foster care in the temporary custody of the court following a review [or permanency planning] hearing . . . or if a child remains in the custody of a guardian or limited guardian . . . the court shall hold a hearing to determine if the parental rights to a child should be terminated and, *if all parental rights to the child are terminated*, the child placed in permanent custody of the court." (Emphasis added.) In my view, the inclusion of the italicized clause signals that the Legislature specifically envisioned that one parent's rights could be terminated while the other parent's rights remain intact. And as a practical matter, when that occurs the nonrespondent parent often enjoys custody of the child.

In *Marin*, 198 Mich App at 566-567, this Court adopted a similar interpretation of the statutory language, but reached its ultimate conclusions largely by relying on policy considerations. Because *Marin*'s analysis strayed from the plain language of the text, *Marin* is legitimately subject to criticism. Nevertheless, I believe that *Marin* correctly held that § 19b(1) does not expressly *limit* "the conditions under which a petition to terminate parental rights may be entertained by the court." *Marin*, 198 Mich App at 568. And nothing in the broader statutory context suggests that a limitation should be implied.

Respondent also raises a constitutional challenge to an interpretation of the statute that authorizes the termination of one parent's rights despite that the child remains in the safe and secure custody of the other parent. Where a child is not in foster care and "extreme circumstances" do not exist, respondent argues, custody arrangements maintained through the Child Custody Act, MCL 722.21 *et seq*., offer stability, safety, and concomitantly preserve the respondent parent's "constitutionally protected right to parent."

-2-

"Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). A parent's rights can be protected within the framework our Legislature has established. Our Supreme Court has emphasized the importance of relative placement in general terms, explaining that "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), which expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.' " *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). In *In re Mays*, 490 Mich 993; 807 NW2d 307 (2012), citing *Mason*, the Supreme Court reversed the trial court's best-interest determination because the record lacked evidence "that the trial court considered whether termination of the respondent's parental rights was appropriate given the children's placement with their maternal grandmother." These cases counsel that in assessing a child's best interests, placement with a *parent* should counsel strongly against termination.

When a court is satisfied that a child's safety and stability are assured by placement with a nonrespondent parent, only in the rare case will termination of a respondent's rights serve the child's best interests. There are several reasons that termination is likely to be unwarranted. Often, as here, the child has a strong emotional bond with the respondent-parent. By terminating parental rights, the court deprives the child of an opportunity for a future relationship not only with a potentially rehabilitated parent, but that parent's family. If the child is well cared for and secure in a parental home, the benefits of termination are difficult to imagine.

Consistent with this approach, it is critical that a trial court obtain a child's views, as required by both MCL 712A.19a(3) and MCL 712A.17d(2). In this case, the trial court's best-interest findings lacked the child's input. Instead, the court grounded its decision in the child's need for "permanency:"

> [T]hese are where, you know, things get a little squirrely in terms of. And once [respondent's counsel's] famous so what defense when a worker said, you know, well it's in the best interests cuz the mom's ridden off the reservation. [Counsel] said, so what? Dad's here. Why is it in the best interests? And then Mr. Corwin once made that wonderful argument that we've all thought in our inside voice but not said in our outside voice that, hey, you know what? People like this die young. Why is it in her best interests not to collect a social security death benefit. These are all things I've heard that are strangely logical.

> But in this particular case, I find that [GB] needs the emotional support. And it has to be stable. There's no indication that [respondent] is able to parent let alone co-parent. And—and, therefore, [GB] needs permanency. And I find that that is most secure. Obviously, there can always be a kidnapping or, you know, I could get robbed at a party store tonight. And, I mean, anything criminal could happen. But with in terms of what's within the purview of this Court, [GB] is most secure. And most likely to find permanence with the parental rights of [respondent] terminated. I will do that at this time and sign an order. There shall be no further Friend of the Court action.

The trial court failed to explain how or why the "permanence" of respondent's absence from GB's life served the child's best interests. Permanence is important to children, but so is a parent's love and affection. From GB's perspective, the permanent severing of her relationship with her mother may have occasioned trauma, grief, and long-lasting pain. Without talking to GB, the trial court could not appreciate this essential component of the best-interests equation. Speculation is not evidence, and the record lacks evidence regarding this critical part of the best-interests equation. For this reason, I would reverse the termination of respondent's parental rights and remand with instruction that the trial court interview GB and render a best-interest determination that not only includes her input, but explains in nonplatitudinous terms the reasons that her interests would be served by termination of respondent's parental rights.


/s/ Elizabeth L. Gleicher