*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUZANNE YOPEK,

        Plaintiff/Counterdefendant-Appellant,

v

BRIGHTON AIRPORT ASSOCIATION, INC.,

        Defendant/Counterplaintiff-Appellee.

FOR PUBLICATION
September 22, 2022
9:15 a.m.

No. 359065
Livingston Circuit Court
LC No. 20-030647-CH

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

HOOD, J.

Plaintiff/counterdefendant Suzanne Yopek appeals as of right the trial court's order granting defendant/counterplaintiff Brighton Airport Association, Inc.'s (BAA) motion for summary disposition, and denying in part its motion for summary disposition. The trial court found that trees on Yopek's property were a public nuisance that had to be abated because, under federal regulations, they encroached into the area used by aircraft when they land or take off from the Brighton Airport. This area is also known as an approach protection area (APA).

We conclude that, under the nuisance statute at issue, MCL 259.156, the state-defined APA controls, not the area defined by federal regulations. We further conclude that the evidence presented below establishes a genuine issue of material fact regarding whether trees on Yopek's property encroached on the state-defined APA. Accordingly, we reverse and remand for further proceedings. On remand, the trial court should address Yopek's claim that BAA acted with "unclean hands" by expanding or otherwise modifying its landing area. It should not, however, consider whether the original easement was valid unless the parties agree to place that issue before the court.

## I. BACKGROUND

This case involves an alleged nuisance and other disputes related to real property, which abuts BAA's airport, the Brighton Airport. In mid-August 1987, Yopek purchased the property now at issue. According to Yopek's complaint, approximately two weeks after she "reached an agreement" to purchase the property, her predecessor in interest granted an original easement to the adjacent property. The prior owner granted the original easement before Yopek purchased the

property by land contract, and before the land contract was recorded. The adjacent property was first owned by BAA's predecessor in interest and then by BAA since 2001. The original easement granted the adjacent property " 'Air Rights' for the flight, landing and take-off of aircraft over the surface of certain land," and was recorded in late August 1987. Yopek alleged that her predecessor in interest then executed an amended easement in late September 1987 (which was not recorded until March 1989). The amendment expanded the easement to include a limit on the height of structures or trees on Yopek's property. It also allowed BAA (and its predecessor in interest) to cut or remove any trees that exceeded the specified height and that were not removed upon request.

In late 2019, BAA asked to trim trees on Yopek's property, because the trees were close to encroaching into the APA aircraft require while approaching the runway. Yopek apparently refused to allow the tree trimming because BAA sought to remove approximately 20 feet from the tops of the trees. This, according to Yopek, would either kill some of the trees or detract from the property's aesthetics. Yopek filed a complaint to quiet title and declare that BAA had no right to enter her property. She maintained that the amended easement on which BAA relied was void. Yopek reasoned that the grantor, Yopek's predecessor in interest, had already entered into an agreement to sell the property to Yopek before that predecessor in interest amended the original easement.

BAA counterclaimed for nuisance abatement under the Aeronautics Code, MCL 259.208 *et seq*. It alleged that Yopek had allowed trees and other vegetation to encroach on the APA for BAA's runway, creating public and private nuisances that endangered the public's health and safety. BAA asserted that Yopek's property was within a "safe approach protection area" for its runway as defined by the Michigan Department of Transportation's (MDOT) Bureau of Aeronautics. BAA stated that MDOT inspected the area in early June 2019, and determined that trees and vegetation on Yopek's property encroached through the floor of the APA, causing a hazard that required mitigation.

The parties filed cross-motions for summary disposition. The trial court granted Yopek's motion, in part, because it agreed that the amended easement was invalid. But it denied her motion, in part, because it concluded that Yopek had notice of, and was bound by, the original easement. The court denied BAA's motion because it found there was a factual issue regarding whether Yopek's trees encroached on the APA. The court also questioned why there was not a more recent inspection report regarding the trees. BAA's attorney indicated that although he had attempted to contact an MDOT inspector, the inspector never responded. The trial court suggested that BAA subpoena the MDOT inspector to determine whether Yopek's trees encroached on the APA.

Pursuant to a subpoena, MDOT inspected the airport. It determined that there were several encroachments of the portion of the protected area as defined by the relevant federal regulations,[1]

---

[1] Federal Aviation regulations prohibit allowing trees and vegetation to grow into, or otherwise encroach upon, an APA. 14 CFR § 77.13 provides, in part, as follows:

but no encroachments in the primary surface area of the APA as defined by state regulations. At a subsequent motion hearing, BAA argued that, under the applicable aviation statutes, Yopek's trees had to be removed or reduced to the extent that they encroached on a protected area as recognized by the federal regulations. BAA reasoned that the federal regulations were included as a part of the applicable aviation statutes. Yopek argued that the federal regulations were not included in the relevant public-nuisance statute, MCL 259.156. She also argued that the APA was over her property only because BAA had extended the runway, and that a county ordinance required BAA to own any land beneath the APA.

The trial court granted BAA's motion for summary disposition, concluding that there was no genuine issue of material fact that Yopek's trees "encroach into the APA under the applicable standards." The trial court stated that the state Aeronautics Commission regulated areas on and around airport property, such as the APA. The trial court also noted that the recent inspection had revealed that Yopek's trees encroached on the APA, were a "safety hazard," and constitute[d] a public nuisance [that] must be abated." The court ordered that Yopek's trees be trimmed to the extent that MDOT determined that they encroached on the APA. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

Questions of statutory interpretation are reviewed de novo, *McQueer v Perfect Fence Co*, 502 Mich 276, 285; 917 NW2d 584 (2018), as are constitutional issues, *Varran v Granneman*, 312 Mich App 591, 607; 880 NW2d 242 (2015). A trial court's ruling on an equitable issue is also reviewed de novo. *Sylvan Twp v Chelsea*, 313 Mich App 305, 315-316; 882 NW2d 545 (2015).

---

This subpart describes the standards used for determining obstructions to air navigation, navigational aids, or navigational facilities. These standards apply to the following:

(a) Any object of natural growth, terrain, or permanent or temporary construction or alteration, including equipment or materials used and any permanent or temporary apparatus.

### III. SUMMARY DISPOSITION

### A. HEARING REQUIRED FOR PUBLIC NUISANCE

As an initial matter, to the extent Yopek argues she was entitled to a hearing on the issue of whether her trees constituted a public nuisance, we agree. But, as with any other civil action, a court may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue of material fact.

A public nuisance is an "unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995). "Unreasonable interference" includes conduct that "(1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Id*. (citation omitted).

MCR 3.601 governs the procedure for public nuisance actions. Such actions are generally governed by the "general rules of procedure and evidence applicable to nonjury actions . . . ." MCR 3.601(A)(1). MCR 3.601(D)(1) provides that "[o]n the day noticed for the hearing, the court shall hear and determine the disputed issues and enter a proper order and judgment." Read in isolation, the rule does not explicitly require an evidentiary hearing, only *a* hearing. See *id*. When viewed as a whole,[2] however, MCR 3.601 contemplates an evidentiary hearing or bench trial in light of MCR 3.601(A)(1)'s reference to the rules of evidence and nonjury actions. A court in a public nuisance action, nonetheless, may grant summary disposition under MCR 2.116(C)(10) if there is no genuine issue of material fact, as in any other civil action. The trial court did so here. Accordingly, we will address the merits of the trial court's summary disposition ruling. To do so, however, we must first address whether the trial court erred when it rejected Yopek's assertion that state standards for identifying APAs apply, and instead applied federal standards.

### B. STATE OR FEDERAL STANDARDS

Yopek argues that the trial court erred by using federal, rather than state, standards to identify the protected area. We agree.

The goal of statutory interpretation is to determine and apply the intent of the Legislature. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). The first step in determining legislative intent is to examine the specific language of the statute. *CG Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 338; 804 NW2d 781 (2011) (citation omitted). "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Id*. (quotation marks and citation omitted). The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. *Id*. "This Court must consider the object of the statute and the

---

[2] "[I]ndividual court rules are to be read in context to create a harmonious whole." *In re Estate of Huntington*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354006) (quotation marks and citation omitted); slip op at 4.

harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose." *Adams Outdoor Advertising, Inc v Canton Twp*, 269 Mich App 365, 371; 711 NW2d 391 (2006) (citation omitted).

The purpose of the Aeronautics Code is "to further the public interest and aeronautical progress by providing for the protection and promotion of safety in aeronautics," including by "establishing uniform regulations, consistent with federal regulations and those of other states . . . ." MCL 259.1. Rather than empower an agency to merely regulate airports, the Legislature intended the Aeronautics Code to "charge the agency with the responsibility of promoting aeronautical activities for the public good, and to confer on the agency all the power necessary to perform this function." *Capital Region Airport Auth v Charter Twp of DeWitt*, 236 Mich App 576, 591; 601 NW2d 141 (1999). The Code created a "state aeronautics commission," the functions of which include to "create and establish a state plan for approach protection areas surrounding airports, . . . by establishing standards of height and use to which any structure or obstruction . . . may be erected or maintained within a distance from the boundaries of any airport . . . necessary for public safety." MCL 259.151(1).[3]

The statute at issue in this case, MCL 259.156, authorizes a court to declare an encroachment on an APA a public nuisance that must be abated:

> It shall be unlawful for anyone to build, rebuild, create, or cause to be built, rebuilt, or created any object, or plant, cause to be planted or permit to grow higher any tree or trees or other vegetation, which shall encroach upon any approach protection area determined by the Michigan aeronautics commission in the state plan for approach protection areas. Any such encroachment is hereby declared to be a public nuisance and may be abated in the manner prescribed by law for the abatement of public nuisances.

On its face, the statute references only the state plan for approach protection areas. It does not reference federal regulations at all.

The trial court held that, according to the MDOT survey, there was an encroachment of the APA under federal regulations. The court noted that the purpose of the Aeronautics Code was to protect the public by regulating the areas surrounding airports. By this reasoning, the violation of federal regulations by way of an encroachment into what those regulations recognize as an APA constituted a public nuisance that must be abated. BAA argues that the trial court correctly incorporated the federal regulations into MCL 259.156 because there are other statutes and

---

[3] " 'Airport approach plan' means a plan, or an amendment to a plan, adopted under [MCL 259.442] of the airport zoning act . . . ." MCL 259.2(j). "The commission shall formulate, adopt and revise, when necessary, an airport approach plan for each publicly owned airport in this state. Each such plan shall indicate and determine the circumstances in which structures and trees are or would be airport hazards, the airport hazard area within which measures for the protection of the airport's aerial approaches should be taken, and what the height limits and other objectives of such measures should be." MCL 259.442.

regulations that mention, or expressly incorporate by reference, the federal regulations. BAA contends that it would be consistent with the purpose of the Code to allow the commission to observe federal regulations as part of ensuring the safety of air travel.

BAA emphasizes that MCL 259.156 refers to "approach protection areas"—plural—while also referring to "*any* approach protection area." MCL 259.156 states, "It shall be unlawful for anyone to . . . permit to grow higher any tree or trees or other vegetation, which shall encroach upon *any* approach protection area determined by the Michigan aeronautics commission in the state plan for approach protection *areas*." (Emphasis added.) The words "areas" and "any" are both modified by "in the state plan." Therefore, the references in MCL 259.156 to "areas" and "any" APA cover areas as defined by the state plan for the protected areas, with no reference to the federal regulations. The Legislature was free to include federal regulations, or otherwise not limit the statute to the state plan for protection areas, in the language of MCL 259.156. It did not do so. Because "[t]he express mention in a statute of one thing implies the exclusion of other similar things," *Bradley v Saranac Comm Sch Bd of Ed*, 455 Mich 285, 298; 565 NW2d 650 (1997), it is apparent that by identifying encroachments on APAs only as those defined by the Michigan Aeronautics Commission as public nuisances, the Legislature impliedly excluded federal regulations from MCL 259.156.

In this case, the language of MCL 259.156 unambiguously states that a public nuisance is determined by whether an obstacle encroaches on "any approach protection area determined by the Michigan aeronautics commission in the state plan for approach protection areas." Under MCL 259.156, therefore, only structures or plantings that encroach on APAs as defined by our state Aeronautics Commission constitute a nuisance. There is no reference to federal regulations in MCL 259.156. Because the statute is clear and unambiguous, judicial construction is neither appropriate nor permitted. See *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 665-666; 649 NW2d 760 (2002). We must read the statute "according to its ordinary and generally accepted meaning." *Id.*; *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010) ("Nothing may be read into a clear statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." (quotation marks and citation omitted). Expanding MCL 259.156 to include encroachments according to federal regulations, in addition to those specifically identified as contrary to the Aeronautics Code, is impermissible. Accordingly, the trial court erred by misreading the statute and rejecting Yopek's assertion that only state standards apply.

## C. QUESTION OF FACT REGARDING NUISANCE

Having concluded that state standards for identifying APAs apply, not federal, we must determine if the trial court erred in finding that there was no genuine issue of material fact regarding whether Yopek's trees encroach into the APA "under the applicable standards." We conclude that the trial court's erroneous conclusion that the federal standards applied led it to err in finding that there was no factual dispute regarding whether Yopek's trees encroached into the APA.

At the second motion hearing, BAA asserted that a May 2021 survey of the APA by MDOT's Office of Aeronautics (MDOT-OA) concluded that there were no encroachments into the APA as measured by Michigan regulations, but that there were encroachments under federal

regulations. Additionally, a member of BAA's board, Keith Walker, had submitted an undated affidavit stating that in early November 2020, he used a specialized tool to observe the "current displaced threshold at the approach end of runway 04, at an angle of approximately 3°," and found that Yopek's trees "encroached into the Approach Protection Area by approximately 7 feet." Walker stated that he used the same device in late February 2021 from "the end of the Primary surface at an angle of approximately 3° without a displaced threshold," and determined that the trees on Yopek's property "encroached into the Approach Protection Area by approximately 14 feet."

The trial court found that MDOT's updated inspection of the runway "determined that under the Michigan Aeronautics Code, the trees are *not* encroaching, however, under the Federal Air Regulations the trees *are* encroaching into the APA." The trial court did not mention Walker's affidavit. The court rejected Yopek's "assertion that only the state standards apply," and noted that the Michigan Aeronautics Commission was obligated and authorized to regulate APAs. The court also noted that the MDOT inspection revealed several encroachments on the APA under federal regulations, and concluded that Yopek's "trees that encroach into the APA area are a safety hazard, constitute a public nuisance and must be abated." The trial court ordered MDOT to identify the portion of the trees that encroached into the APA, the extent to which they encroached, and required abatement only "to the extent necessary to abate the encroachment, and no more."

Yopek emphasizes that MCL 259.156 requires that, in order for a court to declare her trees a public nuisance subject to abatement, the trees must encroach upon any APA "determined by the Michigan aeronautics commission in the state plan for approach protection areas." The May 2021 survey provided by MDOT-OA explicitly declared that there were no "encroachments observed" according to the "aeronautics commission general rules." MCL 259.156 states that a public nuisance occurs when there is an encroachment upon the APA "determined by the Michigan aeronautics commission in the state plan for approach protection areas." As the trial court recognized, there was no encroachment of the APA under the Aeronautics Code. Because state standards for identifying APAs apply, not federal, it was error for the trial court to conclude that there was no question of fact regarding whether Yopek's trees constituted a public nuisance.

BAA also argues that Keith Walker's affidavit demonstrated that Yopek's trees encroached on the APA. We disagree. Walker reported that the trees on Yopek's property encroached on the APA by 7 feet in early November 2020, and 14 feet in late February 2021. The trial court's order did not, however, reference Walker's affidavit or findings. Regardless, even though Walker's affidavit may be some evidence that Yopek's trees constituted an encroachment, there would remain a genuine issue of material fact. Walker's qualifications for measuring the APA according to the standards of the Aeronautics Commission are unknown. There is no evidence in the record that Walker had the expertise to properly determine an APA, that he utilized the proper equipment and techniques, or whether he confined himself to the specific Michigan standards, as opposed to irrelevant federal standards.

Even if the Walker affidavit sufficiently demonstrated an encroachment on the APA, the trial court would still have to consider it alongside the May 2021 report from MDOT. The May 2021 MDOT report establishes a genuine issue of material fact for two reasons. First, the report plainly states that, under state regulations, Yopek's trees did not encroach into the APA. Second, the May 2021 report was drafted several months after Walker's measurements were taken in

-7-

November 2020 and February 2021. Accordingly, BAA's reliance on Walker's affidavit is misplaced; the affidavit supports a finding of a genuine issue of material fact regarding the encroachment of Yopek's trees into the APA. For the foregoing reasons, we conclude the trial court erred by finding that there was no genuine issue of material fact that there were obstructions on Yopek's property that encroached on the APA.

## IV. EQUITABLE RELIEF—UNCLEAN HANDS

Yopek also argues that the trial court erroneously failed to address her claim that BAA is not entitled to seek equitable relief because, according to her, BAA has "unclean hands." We agree.

The unclean-hands doctrine precludes equitable relief, such as nuisance abatement, to parties acting with inequity or bad faith in the matter over which relief is sought. See *McFerren v B & B Inv Group*, 253 Mich App 517, 522-523; 655 NW2d 779 (2002). If there are indications that an equity plaintiff acted unfairly or overreached, the court should refuse to grant equitable relief. *Richards v Tibaldi*, 272 Mich App 522, 537; 726 NW2d 770 (2006) ("The clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant.").

At the hearings, the parties argued about whether BAA had unclean hands, focusing on whether BAA extended the runway or taxiing area and whether BAA complied with a local zoning ordinance. The trial court did not, however, discuss the merits of the parties' positions or address the issue in its final order. In fact, during the first motion hearing, the trial court lamented that a lack of information about the issue precluded any determination on the issue:

> One of the issues—or a big issue that I have between the two parties is that one says that the runway's been extended, and the other party says it hasn't been. What is this Court supposed to know? How am I supposed to know one way or another? Has it been extended; hasn't it been extended? Ms. Yopek says it has been extended over and over again. [BAA] says, through its attorney, that it hasn't been extended. So again, how is this Court going to make a decision as to who is right? It would be important to know whether or not the runway's been extended over and over again.

> * * *

> Again, when I have two parties pointing their fingers at each other, it makes it very difficult for this Court to do a factual basis unless I know the true facts. I am concerned about that. There should be some affidavit, . . . and I think Ms. Yopek does have an affidavit in the file. I don't know if Mr. Walker . . . touched upon this or not, whether or not there's been no extension of the runway. But that should be an easy fact that's proven one way or another that this Court kind of needs to know and would be important upon its decision.

As a threshold issue, the parties dispute whether BAA's counterclaim sought equitable relief, and thus whether the unclean-hands doctrine even applies. BAA argues that it sought an

abatement under MCL 259.156, which, it says, does not constitute equitable relief to which a defense of unclean hands would apply. "Nuisance-abatement proceedings brought in the circuit court" are, however, "generally equitable in nature." *Charter Twp of Ypsilanti v Dahabra*, ___ Mich App ___, ___; ___ NW2d ___ (2021); slip op at 7 (Docket No. 354427) (quotation marks and citation omitted). See also MCL 600.3805 (allowing actions to abate public nuisances as a form of "equitable relief"); MCL 600.2940(5) ("Actions under this section are equitable in nature unless only money damages are claimed."). Even though this claim was under MCL 259.156 of the Aeronautics Code, rather than the public nuisance statutes, it remains a claim to abate a public nuisance. Thus, the trial court could properly consider Yopek's defense that BAA acted with unclean hands. Therefore, on remand, the trial court must make factual findings and a determination regarding Yopek's unclean-hands defense and whether BAA's request for an abatement should be denied. Specifically, the trial court must address whether (1) BAA acted unfairly by extending the runway or taxiing area, including whether BAA took any actions to make the trees on Yopek's property qualify as a nuisance when they did not constitute a nuisance before that action; or (2) by operating in conflict with a local zoning ordinance.

V. ORIGINAL EASEMENT

Finally, Yopek argues that the trial court erred by reaching and deciding the question of the validity of the original easement. We agree.

"An easement is the right to use the land of another for a specified purpose." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007) (quotation marks and citation omitted). "An owner of an easement cannot displace the possessor or the owner of the land, but . . . has a qualified right to possession" to the extent necessary for enjoyment of the easement. *Terlecki v Stewart*, 278 Mich App 644, 660; 754 NW2d 899 (2008) (citation omitted). "The rights of an easement holder are defined by the easement agreement." *Schadewald v Brule*, 225 Mich App 26, 38; 570 NW2d 788 (1997) (citation omitted). The scope of an easement is determined by "the language or express reservations of the grant." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 42; 700 NW2d 364 (2005).

In late August 1987, an easement covering "air rights" was executed by the parties' respective predecessors in interest. The easement provided for " 'Air Rights' for the flight, landing and take-off of aircraft over the surface of certain land described hereinafter and designated to be the servient tenement." Yopek's predecessor in interest attempted to amend the easement—after Yopek purchased the property—to include a provision allowing BAA to enter Yopek's property to trim any trees that grew beyond an established threshold. As noted, the trial court declared the amendment to the easement invalid because it was formed by Yopek's predecessor in interest after Yopek had purchased the property. The court then sua sponte declared the original easement valid.

A trial court may decide an issue not raised in the parties' pleadings when the parties consent. MCR 2.118(C)(1).[4] But a trial court "effectively sua sponte amend[s]" a complaint when

---

[4] "When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the

it improperly "exceed[s] the scope of the case" by ruling on an issue that is not included in a claim. *Bronson v American States Ins Co*, 215 Mich App 612, 619; 546 NW2d 702 (1996).  In this case, neither party made a claim in the pleadings related to the original easement.  During the first motion hearing, Yopek asserted that neither easement was valid because the area of the dominant airport land was not specifically defined.  Yopek concluded her argument as follows:

> Lastly, I would point out that BAA really doesn't have a rebuttal to the fact that the air rights easements, the purported original easement, and the amended easement, don't specify a dominant tenement.  They don't.  And without specifying a dominant tenement, they are not appurtenant.  They don't run with the land, and they're not effective.

BAA argued that the amended easement was valid because it related back to, and clarified, the original easement.

The parties' discussion of the original easement at the motion hearing may appear to indicate implied consent for the trial court to consider its validity.  Yopek made it clear in her April 2021 response opposing BAA's motion for summary disposition, however, that she did not consent to the trial court's considering the validity of the original easement:

> BAA states in its briefing that the earlier "air rights" easement is valid, even going so far as to say that Yopek concedes its validity.  Yopek has made no such concession, and indeed believes that easement to be invalid; however, the validity of that earlier easement is not at issue in this case.  Whether the original easement is valid or not has no bearing on the resolution of any claim or defense at issue in this case.

As noted, the original easement only provided for air rights for the operation of aircraft over what was to become Yopek's property, which was not at issue in this case.  The trial court declared the original easement valid without addressing the objection that it failed to identify the dominant estate with sufficient particularity.  Regardless, because the parties did not make any claims in their pleadings involving the validity of the original easement, and Yopek did not consent to the trial court's consideration of the issue, the trial court's resolution of the validity of the original easement was beyond the scope of the case.  See *Bronson*, 215 Mich App at 619. Therefore, the trial court should not have addressed the validity of the original easement.  Even so, if on remand the parties agree to put that issue before the court, then it may address the issue.

## VI.  CONCLUSION

We reverse and remand for proceedings consistent with this opinion, including resolution of Yopek's claim that BAA acted with unclean hands, but excluding consideration of whether the

---

pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment."  MCR 2.118(C)(1).

original easement was valid if the parties do not agree to put that issue before the court.[5] We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Michael J. Kelly
/s/ Thomas C. Cameron

---

[5] We express no opinion regarding whether the original easement sufficiently specified the dominant estate to be valid. See *Smith v Dennedy*, 224 Mich 378, 381; 194 NW 998 (1923) ("there can be no easement without a distinct dominant tenement"). If, however, the trial court has occasion to reach the issue on remand, the court should determine on the record whether the wording of the original easement sufficiently specified the dominant estate.